SUPREME COUNCIL OF THE GOLDEN STAR FRATERNITY, PLAINTIFF IN ERROR, v. MARGARET CONKLIN, DEFENDANT IN ERROR.

1. The declaration of his age made by an applicant in his petition for membership in a beneficial society, which has been accepted and a beneficiary certificate issued, and the required payments made and received for a series of years, will be presumed to be correct until the presumption is overcome by competent proof.

2. A Bible, in which the names and dates of birth of several members of the same family are recorded, without proof of when or by whom written, or of the knowledge the writer had of the facts recorded, or that the persons whose names and dates of births are written therein ever acknowledged it to be an authentic family record, and when the entries in the book are not shown to have been contemporaneous with the facts stated, is not competent proof of the age of any person whose name may be recorded therein.

---

On error to the Essex Circuit Court.

For the plaintiff in error, *Joseph A. Beecher.*

For the defendant in error, *J. Franklin Fort.*

The opinion of the court was delivered by

· Nixon, J.   The plaintiff in error is a corporation organized pursuant to the act of the legislature of New Jersey, entitled "An act to incorporate benevolent and charitable associations," approved March 9th, 1853.  *Gen. Stat., p.* 149. One of the objects of this Fraternity, as declared in its constitution, is to establish a beneficiary fund, from which, on satisfactory evidence of the death of a member in good standing, a sum not exceeding $2,000 shall be paid as directed in the benefit certificate issued.   Daniel F. Conklin, the husband of the defendant in error, became a beneficiary member of this association, having previously complied with all the constitutional rules and requirements, and received from it a benefit certificate for the sum of $1,000, dated March 11th, 1884, and payable, in case of his decease, to Margaret Conklin, his wife.   He died on the 9th day of October, 1895, and proof of his death was furnished to the Supreme Council of the Fraternity.   Payment of the said sum stipulated in the certificate having been refused, the beneficiary, Margaret Conklin, brought suit and recovered judgment for that amount, with interest and costs.

This writ brings here for review the record, proceedings and judgment in that trial, which took place before the Circuit judge without a jury.   The record shows that only two exceptions were taken at the trial and sealed by the trial judge. The first is to the refusal of the court to nonsuit the plaintiff, and the second to the general finding of the judge against the defendant, which is in the following words : "I find under the evidence in this case that the plaintiff has established a right of recovery against the defendant for the amount of this certificate, $1,000, and I direct judgment to be entered accordingly."

Other errors are specified in the assignment, but as no exceptions other than the two above mentioned were taken at the trial, they cannot be considered by this court.   If, however, there is sufficient evidence to support the finding of the

judge, the other errors alleged are in no way material to the disposition of the case.

At the trial below the plaintiff in error relied entirely on the defence set up in its special plea, that Daniel F. Conklin, in his application for membership in the Fraternity, made a false statement as to his age, no one being entitled to beneficiary membership whose age exceeds fifty-five years at the time of his application. In the application his age was given as fifty-four years, and the date of his birth December 13th, 1829, which would make him fifty-four years and about two months old, thus bringing him within the eligible period. If this statement was in fact false, and the defendant corporation was thereby led to enter into a contract it otherwise would not have made, it would undoubtedly be a sufficient bar to any recovery upon a certificate such as Conklin held at the time of his death. The proof of false representation, however, rests upon the party alleging it, when the object is to overthrow a contract mutually made and accepted.

The suit in this case was based upon the certificate issued to Conklin by the defendant order. The validity of the contract therein expressed will be presumed until overcome by proof, and therefore the issuance of the certificate by the plaintiff in error, duly authenticated, and the good standing of the member at the time of his death, and due notice to the Supreme Council of the Fraternity of the death of the member, if established by the plaintiff, are sufficient to throw the burden of proving misrepresentation upon the defendant. The above facts were either proved or admitted in the evidence for the plaintiff.

But in the proofs of death submitted by the defendant in error, the date of Daniel F. Conklin's birth was stated to be December 13th, 1828, whereas in the application for membership it was given by him as December 13th, 1829. The former date, if correct, would have made him ineligible to beneficiary membership at the date of his application on February 12th, 1884.

In the case of *Holland* v. *Chosen Friends*, 25 *Vroom* 490,

it was held that "the contract of the association with its beneficiary members is made up of the application for such membership, the certificate issued, which is an acceptance of the application for such membership, and the charter, constitution and by-laws of the society."

In his application, as appears by the record before us, Conklin said, among other things, "I agree that any untrue statements, evasion or fraudulent allegation or concealment of facts by me, shall forfeit my right to membership in the Fraternity and all the benefits arising therefrom." The applicant, therefore, consented beforehand, as he had a right to do, that any untrue statements made by him should invalidate any claim to benefits. The controlling question is whether the statement made by Conklin as to his age was true or false, and it is not necessary, in this case, to go into a discussion as to whether it was a representation or a guarantee.

The evidence relied upon by the plaintiff in error to prove the falsity of Conklin's declaration as to his age was, first, the said notice of his death given to the Supreme Council of the Fraternity. The printed form of notice was furnished by the supreme secretary to a son-in-law of the beneficiary. The blanks were filled by the son of the decedent and signed by the defendant in error with her mark, being unable to write her name, and it does not clearly appear that the certificate, when signed, was read to her or that she knew anything about its contents except that it was notice of her husband's death about to be sent to the Fraternity.

Section 4 of article 7 of the constitution of the order provides that "on the death of a member the secretary of the council shall immediately forward to the supreme secretary an official notice of such death, in accordance with a form furnished by the Supreme Council." Nothing is said as to what it shall contain further than the notice of death, and no reference is made in the original application for membership or in the beneficiary certificate to any special form of notice. The contents of the notice in this case were not in any way an element of the original contract between the Fra-

ternity and Conklin. It is only a matter of detail provided by the constitution to be observed after the death of the beneficiary member. The statement as to age in the notice was written by a stranger to the contract, and the beneficiary only signed it with her mark when presented to her for that purpose. Of itself, therefore, it could have but little probative effect upon the question of Conklin's age and only serve to stimulate investigation on that subject. George W. Conklin, the son, being asked where he got the date and place of birth which he put in the notice, said, "I got that information from an old Bible that was in the house; I have got it here now." He further said "he did not know in whose handwriting the entry was made and that he had never seen it before it was brought to him by his sister when the notice was made out." The Bible was offered in evidence and the plaintiff rested, and the motion to nonsuit was then made. There was no error in the refusal of the trial judge to grant the motion. There had been no evidence presented to show that the Bible in question was a family Bible or that Daniel F. Conklin had ever seen it, nor when or by whom the family record it purported to contain was written.

The evidence of the defence throws but little light upon this subject. Margaret Conklin being recalled by the defendant and asked about this Bible, said the stepmother of her husband, who was soon to remove to Connecticut, brought it to her house about ten years ago and asked if she did not want it as a keepsake, and she took it and tied it up and laid it in the bedroom, upstairs, and that she didn't think her husband ever looked into it; if he did it was done privately. A family group of pictures was offered in evidence and the date of Daniel F. Conklin's birth written thereon as December 13th, 1828. This was prepared about fifteen years before, by a daughter since deceased, and it does not appear that Conklin ever authorized his birth to be so written or that his attention was ever called to it in any way. A letter to the supreme secretary from the defendant in error in reply to one from him, stating that the date of birth in the notice of the death of her husband had been

obtained from the family Bible, was also offered.    The evi-
dence for the defence also brought out the additional fact that at
the time of the marriage of Margaret Conklin, the beneficiary,
with Daniel F. Conklin, in June, 1848, she was not eighteen
years old, and her husband was not nineteen to the best of
her knowledge.    If she is correct in her knowledge of the
age of her husband at the time of their marriage, and it is
only reasonable to suppose that a wife would be informed on
that point, then Conklin's age was correctly stated by him in
his application.    This evidence was elicited by the defence.
No further proofs were offered on either side.

It will be perceived that the only evidence to impeach the
correctness of the statement as to age made by Conklin in his
application, had its origin from the record made in the Bible.
This book, judging by the proofs alone, does not possess the
necessary characteristics to warrant its acceptance as an au-
thentic family record.    It falls far short of what is required
to give it such a character.

But the learned trial judge in the court below had the op-
portunity to personally inspect the book itself when offered,
and in the reasoning which led up to the ultimate finding to
which the second exception under consideration applies, he
uses the following language : "The Bible bears the appear-
ance of age.    Perhaps that is hardly correct.    It is mutilated
and shows evidence of use for a long time, but the binding
is not of a character one would expect to find in a very
ancient volume.    The title page being lost, it is impossible to
ascertain the date of printing.    The entries are certainly not
contemporaneous with the facts stated.    The names are
written in one handwriting and apparently at one time,
the same pen and ink apparently having been used.    It is
also apparent that the dates of the birth of the children were
written at the same time, but in a different handwriting from
the names, and with a different pen and ink.    From the ap-
pearance of the ink and the writing, I think that the dates
were appended long after the names were written.    A correc-
tion has been made in one of the dates.    *    *    *    The

question is, can this book, under the evidence, be regarded as a family record? I do not think there is proof in the case warranting me to so regard it. There is no evidence showing when the dates were placed in the book or by whose authority, or what information the person making the entries had. That they were not made contemporaneous with the births of the children named is apparent."

We find no error in the record and the judgment should be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON. 14.

*For reversal* — None.